**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Town of Grand Isle,  Plaintiff,   }
                                   }
v.                                 }
                                   }  Docket No. 124-6-02  Vtec
                                   }
Ivan Patry and Michael             }
Bilodeau, , Defendants.            }

Decision and Order Regarding Jurisdiction and Preliminary Injunction

The Town brought a zoning enforcement action against Ivan Patry, the present occupant and owner or purchaser of the parcel in question, and against the former owner or seller of the parcel, Michael Bilodeau, seeking injunctive relief and money penalties for work done on the parcel without a permit. The Town also moved for a preliminary injunction solely against Ivan Patry, also referred to in this decision as the landowner.

A hearing was held on the preliminary injunctive relief at the courthouse in North Hero, Vermont. Ivan Patry appeared and represented himself, and was assisted at counsel table by Barbara Ann Sempf; the Town of Grand Isle is represented by Edward G. Adrian, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written argument and also argued orally on the record. Upon consideration of the evidence, the written materials and the oral argument, the Court finds and concludes as follows.

By quitclaim deed dated May 14, 2002 and recorded May 20, 2002, and by warranty deed dated June 7, 2002 and recorded June 10, 2002, Ivan Patry acquired from Michael Bilodeau a long narrow parcel of property, approximately 45 feet wide and 480 feet long, located at an address known as 3 Pent Road. For the purposes of this litigation, the Court accepts that this property has been passed down in an unbroken chain of title from the original land grant in 1779 of the islands known as the " Two Heroes." At some time in the more recent past, the property contained a single family dwelling with a failed subsurface wastewater disposal field. The single family dwelling has been removed, but its slab foundation remains on the property. The former subsurface waste disposal system (" leach field" ) has been excavated by or on behalf of the landowner, and was in a failed, flooded condition when excavated.

A witness made reference to the property' s having been ' condemned' in the past under the health statutes regarding the failure of the septic system. Although the former residence on the property may have received a permit for construction on an existing small lot, under the protections for existing small lots under the state zoning enabling act and the Town' s zoning regulations, no prior permit for this property was presented in evidence. Nor was any ' condemnation' order or other health order presented in evidence (see 18 V.S.A. § § 122 and 602a). Therefore we make no findings regarding whether the property is subject to any health order or any zoning permit.

Since May 14, 2002, Ivan Patry and people working on his behalf have uncovered the failed septic system, have installed perforated drainage pipe and crushed stone in the rear portion of the property to conduct water from the property onto the property of a neighbor, Mr. LaFramboise, and have placed a travel camper on the slab formerly occupied by the former dwelling[1]. Ivan Patry and people working on his behalf plan to install a replacement septic system and some type of residence on the property. Ivan Patry has not applied for any municipal permits for any of this work.

Because the property is only 45 feet wide, and the required side setbacks are 25 feet from each side, there is no location on the property on which a structure or a travel trailer can be placed in compliance with the setbacks. Accordingly, the property needs a variance for any structure to be placed.

Because the existing septic system has failed and needs to be replaced, the property needs a septic permit. If the property must be drained in order to install a septic system or for any other reason, it needs prior approval of the drainage. If the property must be drained or if a septic system must be installed in order for the landowner to make reasonable use of the property, it may require a variance also for the drainage or septic permits. If a building is to be placed or built on the property, the landowner must obtain a building permit.

The only question before the court in the present proceeding is whether the landowner should have applied for and obtained any permits from the Town of Grand Isle prior to doing the work that has been done on the property at issue. If so, the Town is entitled to an injunction to stop the work and to require the landowner to apply for and receive all required permits prior to continuing with the work on the property.

We first note that this court has no jurisdiction to determine any property rights or other private rights of action between Ivan Patry and the Town, between Ivan Patry and Michael Bilodeau, between Ivan Patry and the water district, or between Ivan Patry and any of the neighboring landowners. See, e.g., 10 V.S.A. § 1410; 18 V.S.A. § 122. Any lawsuit to enforce such rights would have to be filed in the Grand Isle Superior Court. Similarly, the superior court has jurisdiction under 24 V.S.A. § 4472 over claims that a zoning regulation is unconstitutional. Similarly, the superior and district courts have jurisdiction over enforcement of health orders under 18 V.S.A. § § 130 and 131. (If any related matter are filed, they may be scheduled to be heard together with the merits of this case, by a single judge assigned to all related matters).

However, the Town does not claim any property rights in this land, and does not seek to establish any right of way, servitude, easement or other encumbrance on this land. Rather, the Town asserts its exercise of police power to regulate the landowner's use of his land. Nor does Ivan Patry argue that the zoning regulation is unconstitutional on its face[2].

Mr. Patry argues instead that the Town has no right to regulate his land due to the property rights acquired by his predecessors in title under the 1779 land grant of the so-called " Two Heroes" and confirmed under the 1783 peace treaty. That land grant essentially granted property ownership to persons willing to develop and cultivate at least two acres of each parcel granted. However, that land grant did not create a continuing contract[3] over the intervening two centuries

between the grantee and the grantor. Rather, if the grantee fulfilled all the prerequisites of the grant, the grantee obtained ownership in fee simple. The peace treaty set a time period for contesting any grants, so that land titles would become settled in the new nation.

State courts do not have jurisdiction over treaties entered into between the United States and foreign governments, such as the 1783 treaty of peace between the United States and Great Britain. If that treaty were essential to the determination of the issue in this case, Mr. Patry would be free to apply to the U.S. District Court for the District of Vermont to remove this dispute to federal court. However, the treaty does not determine this case, because the Town's authority derives from the police power, one of the sovereign powers reserved to the states under the 10th Amendment to the U.S. Constitution.

Because this case does not involve a property dispute, does not claim that the zoning ordinance is unconstitutional, and does not seek to enforce a health order, there is no bar to jurisdiction in the Environmental Court as distinct from the superior or district court. Because this case is not determined by the 1783 Treaty of Peace, there is no bar to jurisdiction in the Environmental Court as distinct from a federal court.

The landowner's argument confuses the legal concepts of property rights and the police power. Governmental regulation based in the police power does not violate the constitutional protection against governmental taking of private property without compensation, unless the regulation is so stringent that it leaves the landowner without a reasonable use of the property. In enacting the zoning enabling act, Chapter 117 of Title 24 of the Vermont Statutes, the legislature included several provisions to protect preexisting property rights and to ensure that landowners are not deprived of the opportunity to make reasonable use of their property. Thus, the legislature exempted the continued use and maintenance of pre-existing structures and uses, so long as they have not been abandoned by the owner. The legislature also provided that pre-existing small undeveloped lots could be developed, even if they are too small for development under later-adopted zoning regulations. The legislature provided a variance procedure in 24 V.S.A. § 4468, specifically addressing whether the variance is necessary to enable the landowner to make reasonable use of the property.

However, nothing in the constitution or the zoning enabling act exempts a landowner from having to file an application with the town for a zoning permit, a septic permit, a drainage permit or a necessary variance, in order to determine whether the property is entitled to one of the exemptions or to a variance. Such an application is the mechanism by which the landowner has the opportunity to claim to the Town's DRB that the property is entitled to an exemption or a variance, to avoid a regulatory taking of the property. Such an application must be made to the town in the first instance, before the Court can consider the issue in an appeal from the Town's Development Review Board decision.

The bottom line is that Ivan Patry may or may not be entitled to exemption of his property as an existing small lot. He may or may not be entitled to a variance to make a reasonable use of his property. He may or may not qualify for a permit to install a replacement in-ground septic system, or some other form of innovative treatment of household wastewater. He may or may not qualify for a town[4] drainage permit.

The Court does not make any determination here today of whether the property in question qualifies for any such permits. The Court is not allowed to rule in the first instance on the merits of any of these permits. The legislature has assigned that task to the Town's Zoning Administrator or Development Review Board; the Court may determine the merits of such permits only in an appeal from the Development Review Board.

What we do determine today is that Ivan Patry or any subsequent owner of the parcel must apply for a zoning or building permit, a variance, and, if necessary, a septic permit and a drainage permit, before placing a structure on the property, before installing a wastewater disposal system, and before installing any drainage piping or otherwise increasing the drainage from the property. All further work on the property must cease until the appropriate permits and variances are applied for and granted[5]. Specifically, the travel trailer must be removed until a variance from the setback requirements is obtained for the placement of the travel trailer, and no further installation work may be done on any replacement septic system. Neither the travel trailer nor any other source of wastewater may be hooked up to the existing or replacement septic system, until the landowner acquires the necessary permits.

Based on the evidence, we will not require the removal or digging up of any of the drainage structures that have been installed to date, as long as they are not hooked up to any source of household wastewater. Such removal may be the subject of the hearing on the merits of permanent injunctive relief in this matter.

Based on the foregoing, with respect to the parcel of land described above and known as 3 Pent Road, it is hereby ORDERED and ADJUDGED that until further order of this court, Ivan Patry, his agents, successors and assigns, and all others acting in concert with him, 1. Shall remove the travel trailer until obtaining a variance from the setback requirements for the travel trailer, at which time the travel trailer may be replaced on the property so long as it is not connected to the water supply or wastewater disposal systems on the property and complies with the other requirements of the zoning ordinance regarding travel trailers;

2. Shall apply for a drainage permit for the drainage work already installed and shall cease and desist from any further work on the drainage of the parcel until such permit is obtained;

3. Shall apply for a septic system permit and shall cease and desist from any further work on the replacement of the septic system or any other wastewater disposal system on the parcel until such permit is obtained;

4. Shall apply for a variance from the setback requirements and from any other relevant requirements of the zoning regulations necessary to construct the wastewater disposal system and any building or structure on the parcel and shall cease and desist from any further work on the wastewater disposal system and any building or structure on the parcel until such variance is obtained; and

5. Shall apply for a zoning or building permit to place or construct any building on the parcel and shall cease and desist from any further work on the drainage of the parcel until such permit is obtained.

Dated at Barre, Vermont, at 4:00 p.m. this 14th day of June, 2002.

_____

Merideth Wright
Environmental Judge

**Footnotes**

1.     They have also installed a fence blocking visibility of a portion of the property and have 'unlocked' a water supply pipe served by the local water district. However, no zoning violations are claimed in connection with those actions. 18 V.S.A. §121 may apply to the town's access to the property under the health statutes.

2.     Mr. Patry cannot argue that the zoning regulation is unconstitutional as applied, because he has not filed an application for a variance, a septic permit, a drainage permit, a buiding permit, or a certificate of occupancy. It may well be that his land meets the requirements for a variance of the setback requirement, to allow him to make a reasonable use of the property, but we do not know that a variance would have been denied, as he has not yet applied for one.

3.     Otherwise current landowners would continue to be at risk of forfeiting their property back to the state for failing to cultivate at least two acres of it in perpetuity. Similarly, we need not address the question of what rights if any remained under the original land grants if the parcel size fell below two acres, as has occurred with the present parcel.

4.     He also may or may not have to obtain a state wetlands conditional use determination for work on the site.

5.     We must note for the parties' guidance that if any permit or variance applications are denied, those denials must be appealed or the Court cannot consider the merits of those applications in any later enforcement proceeding.